IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

VERONICA DENISE DALE,            )
                                 )
            Petitioner,          )
                                 )
      v.                         )      Civil Action No. 2:14cv190-WHA
                                 )                (WO)
UNITED STATES OF AMERICA,        )
                                 )
            Respondent.          )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Veronica Denise Dale ("Dale") is before the court on a *pro se* motion to vacate, set

aside, or correct sentence under 28 U.S.C. § 2255.  Doc. No. 1.[1]

## I.   INTRODUCTION

On October 14, 2011, Dale pled guilty under a plea agreement to seven counts charged

in two indictments: one count of conspiracy to defraud the Government regarding claims, in

violation of 18 U.S.C. § 286; two counts of making false claims, in violation of 18 U.S.C.

§ 287; two counts of theft of Government money, in violation of 18 U.S.C. § 641; one count

of wire fraud, in violation of 18 U.S.C. § 1343; and one count of aggravated identity theft,

in violation of 18 U.S.C. § 1028A.[2]  The plea agreement contained a waiver of Dale's right

---

[1] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those
assigned by the Clerk of Court in the instant civil action.  Page references are to those assigned by
CM/ECF.  References to exhibits ("Gov. Ex.") are to those filed by the Government with its response
and supplemental response (Doc. No. 8).

[2] The two indictments were returned in Case Nos. 2:10cr242-MEF and 2:11cr69-MEF.
Dale's guilty plea was entered in a single proceeding, and the plea agreement covered both cases.

(continued...)

to appeal or collaterally challenge her convictions and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.  Gov. Ex. 3 at 10-11. Following a sentencing hearing on May 8, 2012, the district court sentenced Dale to a total term of 334 months in prison.

Despite her appellate waiver, Dale appealed.  Her counsel filed a no-merit "*Anders* brief"[3] with the Eleventh Circuit.  On March 28, 2013, the appellate court affirmed her convictions and sentence, finding no arguable issues of merit upon independent review of the record.  Gov. Ex. 7.

On March 14, 2014, Dale filed this motion for relief under 28 U.S.C. § 2255, asserting the following claims:

1. Her trial counsel rendered ineffective assistance by–

 (a) misinforming her regarding the sentence she would receive and failing to discuss the terms of the plea agreement with her;

 (b) failing to explain the case to her;

 (c) failing to request that she undergo a mental health evaluation to assess her competency to enter a guilty plea;

 (d) failing to object to her sentencing guideline enhancements for (i) committing a crime while on release, (ii) commission of an offense through

---

[2](...continued)
She was sentenced in a consolidated proceeding.

[3] *See Anders v. California*, 386 U.S. 738 (1967).

sophisticated means, and (iii) her leadership role
in the offense;

(e)    failing to obtain a substantial-assistance motion
from the Government; and

(f)    failing to make an ex post facto objection to the
version of the Guidelines Manual used to
calculate her offense level.

2.    Her sentence violated the Supreme Court's holding in *Alleyne
v. United States*, ___ U.S. ___, 133 S. Ct. 2151 (2013).

Doc. No. 1 at 3-11.[4]

Based on the court's consideration of the parties' submissions, the record, and the

applicable law, the court concludes that an evidentiary hearing is not required and that,

pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States

District Courts*, Dale's § 2255 motion should be denied.

## II.    DISCUSSION

### A.    General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for

collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is

entitled to relief under § 2255 if the court imposed a sentence that (1) violated the

Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the

maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C.

---

[4] The claims in Dale's motion overlap in places, are sometimes repetitive, and are not always
presented in a clear fashion.  For organizational and analytical purposes, the court recasts some of
the claims in a more appropriate presentation

§ 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a

heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.   *Assurances and Misinformation about Sentence/ Failure to Discuss Plea Agreement*

Dale contends that her trial counsel rendered ineffective assistance by misinforming her regarding the sentence she would receive and failing to discuss the terms of the plea

agreement with her.  Doc. No. 1 at 3-4.

According to Dale, her attorney, Thomas M. Goggans, induced her to plead guilty by assuring her she would receive a sentence of only seven years' imprisonment "based on the PSI information he had."  Doc. No. 1 at 4.  Dale also maintains that Goggans misinformed her that her prior conviction for first-degree assault was too old to be factored into the computation of her criminal history.  *Id* at 3.

In an affidavit filed with this court, Goggans denies assuring Dale that her sentence would be no longer than seven years.  Doc. No. 7 at 3.  Goggans further notes that no presentence investigation report ("PSI") had been prepared before Dale entered her guilty plea; thus, any representation he allegedly made to Dale "based on the PSI" would have taken place after she pled guilty and could not have influenced her decision to plead guilty.  *Id*. Regarding Dale's assault conviction, Goggans states that, in a letter he sent to the probation office, he originally objected to inclusion of the assault conviction in Dale's criminal history, as set out in the draft of the presentence investigation report ("PSI") prepared by the probation office, but then realized that the assault conviction was properly included and withdrew his objection.  *Id*.  Goggans notes that these matters also occurred after Dale had pled guilty and therefore could not have induced her to enter her guilty plea.  *Id*.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A petitioner alleging ineffective assistance in this context must establish that counsel's performance was

deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, then, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial." *Id*. A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

The record does not support a claim that Dale was induced to plead guilty by any erroneous assurances by counsel regarding her sentence, or that counsel failed to discuss the terms of the plea agreement with Dale. The transcript of the change of plea hearing reflects that the magistrate judge correctly advised Dale of the statutory maximum sentences applicable to her offenses and advised her that an identity theft conviction carries a mandatory term of two years to run consecutive to any other term of imprisonment. Gov. Ex. 10 at 8-9. The written plea agreement correctly set forth this same information. Gov. Ex. 3 at 2-3. The plea agreement contained no provision indicating a specific sentence to be

recommended or imposed.  Dale stated under oath at the change of plea hearing that she and her counsel had reviewed and discussed the plea agreement and that she understood its terms. Gov. Ex. 10 at 5-6.  Dale also affirmed during the change of plea hearing that, other than the terms of the plea agreement, no one had made any promises or assurances to her to get her to plead guilty.  *Id*. at 6-7.  She further affirmed that she and her attorney had discussed how the advisory sentencing guidelines would apply in her case.  *Id*. at 9.  She acknowledged that she understood her sentence would be determined by a combination of advisory sentencing guidelines, possible authorized departures from those guidelines, and other statutory factors and that the sentence ultimately imposed might differ from any estimate made by her counsel. *Id*. at 9-10.  Finally, the written plea agreement signed by Dale contained a provision whereby Dale affirmed that she understood her offense level and criminal history category, as calculated by the probation officer and determined by the court, might differ from any estimate made by her counsel.  *Id*. at 21.

An inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel.  *See United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting ineffective assistance of counsel claim where the court warned the defendant during the plea colloquy that he may face a sentence higher than anticipated and informed defendant of statutory minimum and maximum).  "[A] defendant [who] pleads guilty relying upon his counsel's best professional judgment ... cannot later argue that his plea was due to coercion by counsel."  *United States v. Lagrone*, 727 F.2d

1037, 1038 (11th Cir. 1984).

Here, the alleged assurances by Dale regarding her sentence could only have occurred – if they occurred – after Dale had pled guilty. As noted, the plea agreement did not mention a specific sentence, other than to note the statutory maximums and how the sentence for identity theft would be required to run consecutively. At the change of plea colloquy, the magistrate judge correctly informed Dale of these matters. Dale also affirmed under oath that she and her counsel had reviewed and discussed the plea agreement and that she understood its terms. Dale's sworn statements in open court that her guilty plea had not been induced by any promises or assurances outside the plea agreement – and her acknowledgment that she understood her sentence might differ from any estimates made by her counsel – undermine her present assertion that her guilty plea was induced by erroneous assurances from her counsel. Further, her statement at the change of plea hearing that she had discussed the plea agreement with her counsel and understood its terms directly contradicts her instant claim that her counsel failed to discuss the terms of the plea agreement with her. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Dale fails to overcome that presumption here. Consequently, she is not entitled to relief based on this claim of ineffective assistance of counsel.

### 2. *Failure to Explain Case*

Dale asserts that Goggans was ineffective for failing to explain the case to her. Doc. No. 1 at 10-11. Her cursory allegations in this regard – which are belied by her sworn statements made during the guilty plea colloquy – are insufficient to warrant relief. Suffice it to say, Dale fails to demonstrate how her counsel's actions were professionally unreasonable. *Strickland*, 466 U.S. at 689. Moreover, she fails to demonstrate how she was prejudiced by counsel's alleged deficiencies; that is, she shows no reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Id*. at 694. Consequently, she is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3. *Failure to Request Mental Health Evaluation*

Dale contends that Goggans rendered ineffective assistance of counsel by failing to request a mental health evaluation to assess her competency to enter a guilty plea. Doc. No. 1 at 4-5. Dale maintains she has a history of psychological problems and drug abuse, which Goggans should have brought to the court's attention. *Id*. According to Dale, had Goggans brought these matters to the court's attention, the court would have halted the proceedings and ordered that she undergo a psychological evaluation to assess her competency. *Id*.

At the change of plea hearing, Dale informed the magistrate judge that she had been treated for drug dependency six months earlier and that she was currently taking the prescription medication Paxil, an antidepressant. Gov. Ex. 10 at 4. She stated that, other

than the prescribed Paxil, she was not on any drugs and that she could understand the proceedings. *Id*. The PSI details Dale's mental health and drug dependency issues, noting, among things, that in 2010, she reported suffering a "mental breakdown" after learning of the criminal charges against her; that she was hospitalized for a mental health evaluation in October 2010; that she reported a history of depression; that she underwent an evaluation at Alabama Psychiatric Services in November 2009 and was referred to a doctor for further evaluation; that she reportedly progressed well and was taking Paxil for depression and anxiety; and that she had participated in various drug treatment programs over the years. PSI at 32-33, ¶¶ 114-23.

Addressing Dale's claim in an affidavit filed with the court, Goggans avers that he was aware of Dale's issues with past drug abuse, but that he saw nothing indicating that a competency evaluation was warranted in her case. Doc. No. 7 at 3.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "This standard of proof

is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106). To prevail on such a claim, the petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298-99; *Medina*, 59 F.3d at 1106.

Notwithstanding Dale's mental health history and issues with drug dependency, the record does not "positively, unequivocally, and clearly generate [a] legitimate doubt" about her competency. *Battle*, 419 F.3d at 1299. A review of the record reveals that she appeared to fully understand the proceedings against her and participated meaningfully in those proceedings. After an extended colloquy with her, the magistrate judge concluded she was competent to plead guilty. Gov. Ex. 10 at 20-21. Under the circumstances, Dale is not entitled to relief based on her claim that her counsel was ineffective for failing to request a mental health evaluation to assess her competency to enter her guilty plea.

### 4.   *Failure to Object to Sentencing Guideline Enhancements*

Dale contends that Goggans was ineffective for failing to object to three sentencing guideline enhancements imposed against her: (i) for committing a crime while on release, (ii) for commission of an offense through sophisticated means, and (iii) for her leadership role in the offense. Doc. No. 1 at 5-6.

<u>§ 3C1.3 Enhancement</u>

Dale received a three-level sentence enhancement under U.S.S.G. § 3C1.3 for

committing a crime while on release.  *See* PSI at 26, ¶ 87.  Section 3C1.3 applies "[i]f a statutory sentencing enhancement under 18 U.S.C. § 3147 applies."  U.S.S.G. § 3C1.3.  The statute applies when a person on federal release under the Bail Reform Act, as Dale was here, commits another crime, as Dale did.  *See* 18 U.S.C. § 3147.  Dale committed the crimes to which she pled guilty in Case No. 2:11cr69-MEF while she was on pretrial release in Case No. 2:10cr242-MEF.  There was no basis for Dale's counsel to have objected to application of the § 3C1.3 enhancement.  Counsel is not ineffective for failing to argue a meritless issue. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  Dale is not entitled to relief on this claim.

<u>§ 2B1.1(b)(1)(C) Enhancement</u>

Dale received a two-level sentence enhancement under U.S.S.G. § 2B1.1(b)(1)(C), which applies if the offense "involved sophisticated means."  U.S.S.G. § 2B1.1(b)(1)(C). *See* PSI at 24, ¶ 83.  Notwithstanding Dale's claim in her § 2255 motion, her counsel Goggans did object to application of this enhancement in her case.  *See* PSI at 39; Gov. Ex. 6 at 23.  The district court, however, overruled the objection.  Gov. Ex. 6 at 24.  Thus, there is no basis in fact for Dale's claim that Goggans failed to object to the § 2B1.1(b)(1)(C) enhancement.  Further, the enhancement was appropriate, because Dale participated in a sophisticated scheme to launder refund money using multiple account holders and shell companies and generating laundered cash through supposed "payroll checks."  *See, e.g.*, PSI at 16, ¶¶ 42-43; PSI at 17-18, ¶¶ 48-51.

13

§ 3B1.1(a) Enhancement

Dale received a four-level enhancement under U.S.S.G. § 3B1.1(a) for her leadership role in the offense. *See* PSI at 25, ¶ 85. Under § 3B1.1(a), the sentencing court must apply a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Here, the conspiracy involved more than five participants, and Dale acted as a leader, including recruiting and overseeing several individuals who provided accounts to be used to receive fraudulent refunds. *See, e.g.*, PSI at 16, ¶¶ 42-43; PSI at 17-18, ¶¶ 48-51. Because there was ample evidence that Dale had the leadership role in criminal activity involving five or more participants, there was no basis for Dale's counsel to have objected to application of the § 3B1.1(a) enhancement. Dale is not entitled to any relief based on this claim.

**5.    *Failure to Obtain Substantial Assistance Motion***

Dale asserts that Goggans rendered ineffective assistance of counsel by failing to obtain a downward departure for substantial assistance from the Government. Doc. No. 1 at 6-7.

Section 5K1.1 of the sentencing guidelines provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. The Government has "'a power, not a duty, to file a motion when a defendant has substantially assisted.'" *United States v. Forney*, 9 F.3d 1492,

1500 (11th Cir. 1993) (quoting *Wade v. United States*, 504 U.S. 181, 185 (1992)). Therefore, a district court cannot grant a downward departure for substantial assistance absent a motion by the government. *Forney*, 9 F.3d at 1501. Judicial review of the Government's failure to file a substantial-assistance motion is appropriate only "when there is an allegation and a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation." *Wade*, 504 U.S. at 185-86; *Forney*, 9 F.3d at 1502. Dale neither alleges nor makes a substantial showing that the prosecutor's refusal to file the § 5K1.1 motion for a downward departure was based on a constitutionally impermissible motivation.

At sentencing, the prosecutor and Goggans informed the district court that there had been meetings between Dale and the Government, but the Government had decided not to file a substantial-assistance motion. Gov. Ex. 6 at 5. Dale makes no showing that the Government's decision not to file such a motion was based on any actions, or inaction, by Goggans. Therefore, she is entitled to no relief on her claim that Goggans rendered ineffective assistance of counsel by failing to obtain a substantial-assistance motion.

**6.     *Failure to Make ex Post Facto Objection to Version of Guidelines Manual Used at Sentencing***

Dale contends that Goggans was ineffective for failing to argue that an ex post facto violation resulted from use of the 2011 version of the Guidelines Manual in her case. Doc. No. 1 at 7-8. According to Dale, use of the 2011 Guidelines Manual (which was in effect when she was sentenced in May 2012) instead of an earlier version of the guidelines in effect

when her criminal conduct supposedly concluded caused the PSI and the district court to overstate the number of her victims for purposes of U.S.S.G. § 2B1.1(b)(2), thereby increasing her guidelines sentencing range in violation of the Ex Post Facto Clause.[5]

Section 2B1.1(b)(2)(C) of the sentencing guidelines calls for a six-level specific-offense-characteristic enhancement for certain economic fraud offenses involving 250 or more victims.  *See* U.S.S.G. § 2B1.1(b)(2)(C).  The district court applied the six-level § 2B1.1(b)(2)(C) enhancement to Dale, adopting the PSI's finding that Dale's offense involved 250 or more victims because she and her coconspirators "attempted to steal millions from the government using at least 250 stolen identities."  PSI at 24, ¶ 82.  Application Note 4(E) to § 2B1.1(b)(2), which became effective in November 2009, broadens the definition of "victim" for economic crimes involving identify theft to provide that, in such cases, "'victim' means (i) ['any person who sustained any part of the actual loss,' U.S.S.G. § 2B1.1 cmt. n.1]; or (ii) *any individual whose means of identification was used unlawfully or without authority*."  U.S.S.G. § 2B 1.1 cmt. n.4(E) (emphasis added).  Prior to implementation of Application Note 4(E), a "victim" for purposes of § 2B1.1(b)(2) must have sustained an economic loss or bodily injury.  *See* U.S.S.G. § 2B1.1  cmt. n.1(A) & (B) (2008).

As a general rule, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a).  However, "[i]f the court determines

---

[5] The Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 10, protects people from, among other things, being subjected to a punishment more severe than that prescribed when the crime was committed.  *See United States v. De La Mata*, 266 F.3d 1275, 1286 (11th Cir. 2001).

that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). *See Peugh v. United States*, ___ U.S. ___, 133 S. Ct. 2072, 2084 (2013) (holding that the Ex Post Facto Clause is violated when a defendant is sentenced under a version of the guidelines promulgated after she committed her crime if the newer version of the guidelines yields a higher sentencing range).

Dale seems to suggest that her criminal conduct concluded before November 2009, when Application Note 4(E) became effective and broadened the definition of "victim," and that the victims of her crimes do not meet the narrower, pre-November 2009 definition of "victim" under § 2B1.1(b)(2). Consequently, she argues that use of the 2011 Guidelines Manual, with its expanded definition of "victim" in Application Note 4(E), led the PSI and the district court to vastly overstate the number of her victims for purposes of § 2B1.1(b)(2). She maintains that Goggans was therefore ineffective for failing to argue that use of the 2011 Guidelines Manual in her case violated the Ex Post Facto Clause.

Notwithstanding Dale's suggestion that her criminal conduct concluded before November 2009, the criminal activity to which she pled guilty in Case No. 2:10cr242-MEF continued until December 2010, and the criminal activity to which she pled guilty in Case No. 2:11cr69-MEF *did not even begin* until January 2011. The broader definition of "victim" introduced in November 2009 through Application Note 4(E) is contained in all versions of

17

the guidelines manuals from the 2009 version through the present.  Consequently use of the 2011 Guidelines Manual (i.e., the version in effect when Dale was sentenced) to determine the number of Dale's victims for purposes of § 2B1.1(b)(2) did not result in the counting of more victims or a higher sentencing range than would have resulted from use of *any* version of the guidelines manual in effect after her criminal activity concluded.[6]  Use of the 2011 Guidelines Manual in her case did not violate the Ex Post Facto Clause, and her counsel was not ineffective for failing to raise such an objection.  Dale is not entitled to any relief on this claim.

### C.   *Alleyne* Claim

Dale claims that her sentence violated the Supreme Court's holding in *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151 (2013), because the district court applied sentencing enhancements based on judicial factfinding.  Doc. No. 1 at 8-10.

---

[6] The Government correctly observes that "even though a small slice of Dale's conduct [in Case No. 2:10cr242-MEF] pre-dated the 2009 amendment, the result is the same."  Doc. No. 8 at 12.  As the Government notes:

> Under the "one book rule," where a defendant's offenses occurred both before and after a relevant amendment, the Court employs the later, amended manual  *See* U.S.S.G. § 1B1.11(b)(3).  Thus, for example, a defendant, like Dale, who is convicted of a conspiracy that began before, but continued after, a Guideline amendment became effective may be sentenced based on the amendment without triggering any Ex Post Facto concerns.  *See United States v. Masferrer*, 514 F.3d 1158, 1163 (11th Cir. 2008).  In the same vein, a defendant, again like Dale, who is convicted of related, grouped offenses occurring both before and after an amendment, can be sentenced based on the amendment without running afoul of Ex Post Facto considerations.  *See United States v. Bailey*, 123 F.3d 1381, 1404-07 (11th Cir. 1997).

Doc. No. 8 at 12-13.

18

In *Alleyne*, the Court held that the enhancers described in 18 U.S.C. § 924(c)(1)(A)(ii) and (iii), for brandishing or discharging a firearm, triggering higher mandatory minimum sentences, must be treated as elements of separate, aggravated offenses, to be alleged in the indictment and proved beyond a reasonable doubt.  133 S. Ct. at 2161-63.  More broadly, the Court held that, except for prior convictions, "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" or admitted by the defendant.  *Id*. at 2155. *Alleyne* overruled *Harris v. United States*, 536 U.S. 545, 557 (2002), which had earlier held that facts found by a judge could increase the statutory mandatory minimum sentence applicable to a defendant.  *Alleyne*, 133 S. Ct. at 2155.

*Alleyne* is not retroactively applicable to cases on collateral review and is therefore procedurally barred as a basis for Dale to obtain relief.  *Chester v. Warden*, 552 F. App'x 887, 891 (11th Cir. 2014) ("*Alleyne*'s rule does not apply retroactively on collateral review."); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014); *Barkley v. Hastings*, 2014 WL 808079, at *5 (S.D. Ga. Feb. 28, 2014).  On direct appeal, Dale raised no claim under *Alleyne*.  If a claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding unless the petitioner can establish cause and prejudice for his failure to assert the claim on direct appeal.  *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001); *Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994).

Dale suggests ineffective assistance of her counsel as cause excusing her failure to

assert her *Alleyne* claim on direct appeal. *See* Doc. No. 12 at 4-5.  However, *Alleyne* was not decided until June 17, 2013, well after Dale's sentencing and several months after her convictions and sentence were affirmed on appeal.  An attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel.  *See, e.g., United States v. Ardley*, 273 F.3d 991, 992 (11th Cir. 2001); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).  Thus, Dale's counsel cannot be faulted for failing to anticipate the Supreme Court's decision in *Alleyne*, and Dale's claim under *Alleyne* is procedurally barred.

Further, Dale's *Alleyne*'s claim is meritlless.  Regarding the sentencing guideline enhancements applied to Dale, *Alleyne* expressly does not apply to factual determinations affecting only a defendant's sentencing guidelines range, but instead applies only to determinations affecting the applicability of a *statutory* mandatory minimum sentence.  133 S. Ct. at 2163.  As to Dale's mandatory two-year sentence for aggravated identity theft, by pleading guilty to the aggravated-identity-theft count, Dale admitted to all facts necessary to allow the district court to impose the mandatory two-year sentence for that offense.  Thus, Dale's mandatory minimum sentence for aggravated identity theft was not based on judicial factfinding, but rather on her own admissions to having committed all elements of the offense.  Therefore, Dale raises no meritorious *Alleyne* claim, and she is not entitled to any relief.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28

U.S.C. § 2255 motion filed by Dale be DENIED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **January 4, 2016**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 21st day of December, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

21